BRAVO ET AL., PLAINTIFFS AND APPELLANTS, *v.* BRAVO ET AL.,
DEFENDANTS AND APPELLEES.

## APPEAL from the District Court of Mayagüez in an Action for an Accounting, etc.

No. 1747.—Decided May 31, 1919.

ACCOUNTING—GUARDIAN—PLEADING.—In an action for an accounting it is not enough that the plaintiff allege only the failure to render an accounting, but if the guardian refuses to render such accounting the plaintiff must prove that the guardian took possession of the patrimony or negligently failed to do so.

ID.—ID.—MALICE OR FRAUD—CARE AND DILIGENCE.—The judgment in an action of this kind is always compensatory and never exemplary, unless malice or fraud is alleged. The duty of a guardian regarding the property of his wards is to employ the same care and diligence that any prudent man would employ in his own business.

ID.—ID.—JUDGMENT ON PLEADINGS.—Although in an action for an accounting the answer may be defective and the complaint may set forth all the truth, in accordance with section 194, paragraph 2, of the Code of Civil Procedure a trial is always necessary in order to investigate the accounts; therefore, the court does not err in refusing to strike out the answer and render judgment on the pleadings.

ID.—ID.—NEGLIGENCE—PRODUCTIVENESS OF PROPERTY.—The exclusion of evidence tending to show that certain properties could have been more productive involves no error in the absence of any showing that it was the intention to prove that the failure to produce was due to the negligence of the guardian, and the unproductiveness of certain properties is no evidence of negligence, unless it is shown that it was his duty to make them productive.

ID.—ID.—PARTNERSHIP—PARTIES.—The fact that the guardian is a member of a partnership in which the appellants have an interest does not allow an unlimited investigation of the affairs of said partnership when it is not a party to the action for an accounting.

ID.—ID.—EVIDENCE—SELF-SERVING DECLARATION.—The testimony of the defendant that he had had no complaints from the tenants does not constitute a self-serving declaration, for this is a statement of fact and not merely hearsay evidence.

ID.—ID.—ID.—PAYMENTS.—It was unprejudicial error, if any, to permit the defendant to submit in the lump the receipts for the payments made, for the fact that they were in his custody was evidence of their authenticity and his sworn statement that the payments were made is *prima facie* evidence.

ID.—ID.—FRUTOS POR PENSIÓN.—In testamentary guardianships *a frutos por pensión* the guardian is generally relieved of the obligation to render accounts

of the administration or of the use of the products of the properties subject to the guardianship, and this rule applies both to annual and final accounts, for the products of the properties are his own and he would be rendering accounts to himself.

The facts are stated in the opinion.

*Messrs. Feliu & Alemañy* for the appellants.

*Messrs. J. H. Moscoso* and *José de Diego* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

At the hearing of this case the attorney for the appellants did not argue the case extensively on account of the physical condition of his opponent, José de Diego, who at the time seemed to be very ill; nevertheless, the first impression we received at the hearing was produced by the oral argument of José de Diego, which was the last forensic speech delivered by this distinguished attorney, and the impression favorable to the position of the principal defendant in this case has taken a still stronger hold on our minds after examining the record and the briefs.

This is an action for an accounting and for damages arising from negligence, brought by three of the six interested persons against their guardian concerning two different estates of their paternal grandparents. The other three heirs have been included as defendants because they refused to join the plaintiffs.

Luis Bravo y Pardo, paternal grandfather of the plaintiffs, died in Mayagüez, Porto Rico, having made a will on May 4, 1903, before Notary Mariano Riera Palmer, of that city, wherein he named as his sole heirs his wife, Santos González e Izquierdo, and his children Arturo, Alejandro, Alfredo, Jacobo, Oscar, Consuelo, Carmen and Sara, and, by representation, his grandchildren, Luis, Clara, Sara, Judith, Berta, and David Bravo y Roselló, legitimate children of Luis Bravo y González, who, in turn, was the legitimate child of testator Luis Bravo y Pardo and had died before that date.

In his will the said Luis Bravo y Pardo appointed his wife, Santos González e Izquierdo, as guardian of the plaintiffs, who at the time were minors, and of their brothers and sister, Luis, Berta, and David Bravo y Roselló, and, in the event of the death of the guardian, he appointed as such defendant Alberto Bravo y González, releasing the guardians from giving bond and assigning them the income out of which to support the wards (*a frutos por pensión*). Santos González e Izquierdo resigned her guardianship on December 26, 1906, and the court accepted it on the same day, month and year.

On the very same day, December 26, 1906, the court appointed defendant Alberto Bravo González as guardian of the said minors. On January 17, 1907, the said Bravo González renounced in favor of the plaintiffs and their brothers and sister whatever compensation he should be entitled to by reason of the guardianship, and on February 25 following he resigned his guardianship, which resignation was accepted on the twenty-eighth of the same month and year, with cancelation of the bond he had given for $4,000 to answer for the faithful discharge of his duties, and which was signed by the codefendants Juan Torruellas and José C. Rivera as sureties.

On March 8, 1908, Santos González Izquierdo died in the city of Mayagüez, and by her last will and testament made before notary Mariano Riera Palmer on May 4, 1903, she appointed as guardian of the plaintiffs and their brothers and sister defendant Alberto Bravo González. On July 16, 1908, the partition of her estate was presented to the court, wherein the plaintiffs and their brothers and sister were allotted the sum of $3,908.329/11, for the payment of which several properties were awarded to them, to wit:

(*a*) A share of $369.42 to each, or $2,216.52, in a house numbered 86 on Mendez Vigo Street, Mayagüez.

(*b*) A share of $1,681.819/11, or $280.308/6, and also one-sixth

of 9/11, in the amount of $18,500 belonging to the testatrix as silent partner of the firm of A. Bravo & Company.

(c) In household furniture, a share to each of one-sixth amounting to $9.99.

The properties inherited by the plaintiffs from their grandfather consisted of (*a*) a rural property of two *cuerdas,* situated in the ward of Sábalos, of Mayagüez; (*b*) another property of 15.50 *cuerdas,* situated in the same ward; (c) a lot of 19⅔ yards, situated in the extension of Candelaria Street and known as Boulevard Balboa; (*d*) $1,681.2/9 in the $37,000 invested by the testator as silent partner in the mercantile partnership of A. Bravo & Company, of Mayagüez.

Although the appellees have in a general manner answered the brief of the appellants, nevertheless they have not discussed one by one the errors assigned by them, and for that reason the task of discussing the said errors falls upon this court.

Before entering into consideration of the errors assigned we wish to make some general statements. The principal action is for the rendition of accounts. In this class of actions it is not sufficient for the plaintiffs to allege merely the failure to render accounts, but, in addition, if the guardian refuses to render said accounts, the plaintiffs must show that he is in charge of the estate or that he negligently failed to take charge of the properties which he should have taken possession of.

The judgment to be rendered in this case would always be a judgment for compensation and not exemplary, unless malice, deceit, or fraud were alleged, and these elements have not even been suggested herein. The duty of the guardian with regard to the properties of his wards is the use of such diligence as a prudent man would exercise in attending to his own business (*quanta in suis rebus diligentia*). 12 R. C. L. 1155, and cases cited under Note 3. See also Sandar's Jus-

tinian, p. 403; 19 Scaevola, 513; *Konigsmacher* v. *Kimmel,* 21 A. D. 374; *McLean et ux.* v. *Hosea et al.,* 48 A. D. 94, 97.

Where it is shown that certain properties or moneys have gone into the possession of a guardian who is not appointed as such *a frutos por pensión,* the duty to render accounts is imperative, but the care or diligence that he must exercise is that of a prudent man.

I. Appellants, plaintiffs in the trial court, filed a motion to strike out the answer and for judgment on the pleadings. Assuming that the answer was defective as to the matters alleged and assuming also that the complaint set forth all the truth, nevertheless, in accordance with section 194, paragraph 2, of the Code of Civil Procedure, it was still necessary to order an investigation of the accounts, not only as to the money that came into the hands of the guardian, but also as to the moneys or properties which he negligently failed to collect or take charge of, so that a trial was always necessary. The answer, however, was not totally defective. Appellants maintain that it must be presumed that the court overruled the motion to strike. Although on one occasion, at least, we have held that such presumption should prevail as to a demurrer, we are in doubt as to whether such presumption obtains as to a mere motion. The motion was heard, but it was never decided. Almost immediately thereafter the parties made a stipulation to submit the case to referees, afterwards to a single referee, and subsequently to submit the controversy between the parties and the report of the referee to the court. Under these circumstancs, and especially on account of the failure to insist on the motion and of the submission to the court, the court did not err in failing to strike out the answer.

II. Appellants assign as another error the permitting of the guardian to introduce evidence to show that he had been substituted by another guardian as to the estate of the grandfather. The admission of this evidence was wholly unprejudicial and of no consequence, as the appellants them-

selves admit, and in any event it tended to show that another person was responsible. Of course, if appellee took charge of the properties of the minors he can be brought to account for the responsibility arising from a quasi-contract, but not as a guardian. The evidence was of some importance as to the question of guardian *vel non*.

III and IV. The exclusion of the expert testimony was entirely justified if the defendant was not the guardian of the estate of the grandfather, even though he should be responsible under a quasi-contractual obligation. The exclusion of evidence tending to show that certain properties could have been productive or could have produced more than they did involves no error in the absence of any showing that the appellants intended to prove that the failure to produce was due to the negligence of the defendant. This reasoning applies also to any property under the control and responsibility of Bravo by reason of the guardianship. Considered by itself, evidence tending to show that a certain property was unproductive, and especially in the case of a fruit grove, does not involve negligence. As already stated, defendant was not bound to exercise more care than that of a man attending to his own business, and the fact that he left unproductive certain rural properties was no evidence of negligence in the absence of any showing that it was his duty to make them productive.

V. Appellants had certain rights or interests in the partnership of A. Bravo & Company. As to this suit, the said firm not being a party, the business of the firm could not properly be investigated, except to show that certain properties or moneys belonging to the minors and included in the assets of the firm came into the hands of the defendant as guardian and that he had failed to account for it. Neither here nor elsewhere is there the least suggestion of fraud or conversion by the defendant, since the evidence tended to show only that there was a certain amount of money, assets of the partnership, which ought to have been distributed or

collected by the managing partners of the firm. It is true that the defendant was one of the managing partners of the mercantile partnership of A. Bravo & Company, but as such firm was not a party, only a very limited investigation into the matters of the said concern could be permitted. Besides, appellants offered in their behalf the testimony of the defendant and the court had a perfect right to believe his statement that he had received nothing from the said firm and for such account.

Assignments VI, IX, XII, XIII, XIX, and XX relate to the admission of evidence tending to show the good management of the defendant. The fact that the defendant was permitted to say that he had had no complaint from the tenants does not constitute a self-serving declaration. The absence of complaint from the tenants is a fact by itself and not merely hearsay evidence.

By means of the testimony of the witnesses their opinions were submitted as to the management of the defendant. This evidence was unprejudicial or admissible, because it purported to prove the concurrence of other joint-owners in the management of the properties in controversy. The other members of a community can well be called to testify as to their concurrence in the management, when they, with the defendant, make a majority of the joint-owners. Section 405 of the revised Civil Code.

VII. It was an unprejudicial error, if any, on the part of the court to permit the defendant, in a complicated administration, to submit in the lump the receipts for the payments made. The fact that they were in the custody of the defendant was a source of evidence of their authenticity. In an action for the rendition of accounts the defendant can do nothing but submit his receipts under a sworn statement, and should the actual payment and the signature to each receipt need proof, the suit would be endless and all kinds of collateral issues would be suggested. It would be much easier for the plaintiffs to show that some of the credits to

which the guardian refers were never paid. The answer of a defendant or his sworn statement that payment was made is *prima facie* evidence. 1 C. J. 663 *et seq.*

Appellants discuss but briefly Assignments XIV, XV, XVI, XVII and XVIII, and so shall we. They refer partly to the admission in evidence of the receipts sworn to by the defendant or to the evidence relating to the payment of taxes.

Errors VIII and IX refer to the admission of evidence offered by the defendant to the effect that he had acquired the interests of other joint-owners in house No. 86 Méndez Vigo Street. The admission of such evidence does not constitute error on the part of the court. However, defendant was justified in maintaining that his administration of the said house was in the character of principal owner and not as guardian, as we think it was, and this point we shall discuss below.

Appellants maintain that an order declaring the guardianship vacant is void unless certain formal requisites are first complied with, inventories taken and accounts rendered. It is unnecessary to decide this question, the action being one for the rendition of accounts. Even though a defendant, either as guardian or as manager of another's property, is under the duty to render accounts; if he is obstinate and does not do so, judgment could not be entered against him for any sum that the plaintiffs choose to name. As we have suggested, the plaintiffs would then have a right of recovery, but such right must be shown. They have to prove, as above suggested, that certain properties came into the hands of the guardian for which he has failed to account, besides negligence on his part. We have found no showing, nor have appellants suggested, that the whereabouts of certain properties or moneys have not been sufficiently explained in this case. Appellants place great stress on the failure to render accounts and on the failure of the court to compel the defendant to render them.

With a few exceptions, which do not affect the question

raised, all the evidence shows that the defendant never received nor came into possession of any property belonging to the estate of the grandfather, and the record (p. 87 *et seq.*) seems to point out that the guardian had rendered accounts before the trial.

XXIII. This assignment refers to a question not really applicable or related to this case. As the firm of A. Bravo & Company was not made a party defendant, the question of whether that firm could be dissolved and liquidated independently of the minors is immaterial and we cannot see how this pronouncement of the court could affect appellants herein.

The lower court was justified in refusing to accept the report of the referee. He did not confine himself to making a report of the amounts for which the defendant was responsible, but tried to determine the interest that appellants had in the firm of A. Bravo & Company, a question that is not involved in this suit and was not submitted to him. Besides—and this is the most important—the action of the court upon revising the report of the referee could only be alleged as error if the final decision of the court was erroneous, inasmuch as the court had the power to revise the whole procedure of the referee. It is unnecessary to decide whether the defendant was responsible as guardian or for damages.

Appellants complain that the court failed to set forth its findings of fact and conclusions of law. Besides such applicability as the case of *Paganacci* v. *Lebrón,* 24 P. R. R. 743, 757, may have to the present case, the appellants did not ask the court to make such conclusions and findings and took no other step to compel the lower court so to do. In no event can this question be raised originally before this court.

Whatever the responsibility of the defendant may be, either as guardian or as manager of another's property, it behooved the plaintiffs to show the responsibility incurred

and to prove the amounts of money or the amount of the damages for which defendant must be held responsible.

We also agree that the defendant is responsible for damages if negligence is shown, but we do not find that he was responsible for such damages, either as guardian or as manager of another's property. The question of negligence on the part of the managing partners of A. Bravo & Company is not at issue in this controversy.

With regard to the house on Méndez Vigo Street, we agree with the lower court that the administration of the defendant was as principal owner and not as guardian, but in any event it was not satisfactorily shown that defendant's administration had been negligent. The indications of the record are that his administration was not satisfactory to some of the joint-owners, but was to the other adult joint-owners and to the minor wards or their spouses. We find no reason to go against the opinion of the court to the effect that such damages did not exist.

It appears from the evidence that defendant intervened in a contract of lease in favor of Lippitt, of a parcel of land belonging to the grandfather, and also that he received some of the rent of this property, but apparently such rents were handed in to the minors, and, anyhow, there has been no complaint.

Perhaps one of the principal questions in this case was the nature of the guardianship. The defendant was appointed guardian *a frutos por pensión,* not only for the estate of the grandfather, but also for that of the grandmother. In testamentary guardianships of this kind the guardian is generally relieved of the obligation to render accounts to his wards, or to the court, of the administration or the use of the fruits produced by the properties subject to the guardianship. 5 Scaevola, Commentaries on the Civil Code, pp. 250–51; Judgments of October 1, 1897, October 28, 1904, November 28, 1905. And this rule applies not only to the annual accounts but also to the final account of the ad-

ministration.   At most, he can be required to give support. To sustain the contrary would subject the guardian *a frutos por persión* to the obligation of rendering accounts to himself, as the fruits produced by the properties of the minor are his own.   There may be exceptions to the settled rule, but they are not involved herein.   The appellants say that the wards did not live at the house of the guardian, but there is, however, sufficient evidence to demonstrate that he gave various sums of money for the education of some of the children and that he paid their fare to New York.   And, besides, he turned over to the wards several important sums of money from their interests in the partnership of A. Bravo & Company and from the rent of the house on Méndez Vigo Street, if he did nothing else, and, as we have seen, an inventory was taken of the properties before the trial took place.

It also seems that a great part of the time the administration was in charge of Luis Bravo Roselló, the eldest brother of the wards, and that he was perfectly acquainted with the whole administration.

As the principal object of this suit involves a question of negligence, which was not proven, and the failure to render accounts, which failure relates rather to assets that, in the judgment of the plaintiffs, should have been collected and not to things that were actually collected, we think that the court was not mistaken in believing that this suit was brought without the just reason (*razón derecha*) of which the Laws of the *Partidas* speak, mentioned in the case of *Vivas v. Hernaiz, Targa & Co.*, 24 P. R. R. 779, 786, and that therefore the trial court was justified in adjudging that appellants should pay the costs and attorney fees.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.